UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRANDON PATRICK HAGOPIAN,

    Plaintiff,

v.

CAPTAIN DAVID JOSEPH, JOHN LAKIN, C/O
KYLE SHREIBER, C/O NICK BARDELMEIER,
C/O JODY COLLMAN, DR. BLANKENSHIP,
CAPTAIN GARY BOST, NURSE MAJOR,
NURSE ALISIA RUSHING,

    Defendants.

Case No. 16-cv-602-JPG-GCS

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 109) of Magistrate Judge Gilbert C. Sison recommending that the Court grant in part and deny in part the defendants' motion for summary judgment (Doc. 84), leaving only parts of each count for trial. Plaintiff Brandon Hagopian (Doc. 114) and the defendants (Docs. 115) have objected to the Report.

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

The Court will discuss the Report and the parties' objections by count.

**I.      Count I**

In the remaining parts of Count I, Hagopian sues defendants Lakin, Bost, Joseph, Rushing, and Major for deliberate indifference to medical needs presented by Hagopian's broken foot that occurred on December 29, 2015, but for which he did not receive medical treatment and evaluation until late January 2016.  There is a dispute of fact over why this was.  The defendants claim Hagopian had a medical appointment scheduled for December 31, 2015, but he refused to go; Hagopian claims that his supposed refusal was a fabrication of a correctional officer.  Thereafter, Hagopian received medical treatment, including several visits to an outside orthopedic specialist, but not always the treatment recommended by the doctors who saw him such as, for example, a bone growth stimulator or surgery.[1]

Magistrate Judge Sison recommends granting summary judgment for all defendants except Bost and Joseph in their individual capacities on the grounds that there is no evidence of their personal involvement.  Hagopian objects to the Report's recommendation to grant summary judgment for Lakin, Bost, and Joseph in their official capacities, and the defendants object to the Report's recommendation to deny summary judgment to Bost and Joseph in their individual capacities.  The Court addresses each of these objections in turn.

   A.      Hagopian's Objection

Magistrate Judge Sison correctly identified Hagopian's official capacity claims against the sheriff in his official capacity as claims pursuant to *Monell v. Department of Social Services*,

---

[1] The Court is puzzled and dismayed by the notes of one of the specialists indicating that she would have recommended certain treatment had Hagopian not been in jail, but since he was, she recommended other treatment.  If Hagopian requires a certain treatment, his detainee status should not be relevant to whether the procedure is prescribed; the jail is obligated to provide adequate medical care regardless of what that care is.  To the extent it may have instructed any physician that certain treatment cannot be recommended, it has overstepped its bounds.

436 U.S. 658, 690 (1978),[2] Under *Monell* a local government body such as a sheriff may not be held liable under § 1983 on a *respondeat superior* theory, but may be liable if its official policy or custom violates a plaintiff's constitutional rights. *Id.* at 690-91. Such a policy may exist if (1) the municipality had an express policy calling for constitutional violations, (2) the municipality had a widespread practice of constitutional violations that was so permanent and well settled as to constitute a custom or usage with the force of law or (3) a person with final policymaking authority for the municipality caused the constitutional violation. *Id.* at 694; *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000).

With respect to the supposed widespread practice of correctional officers falsifying inmate refusals to attend medical appointments, Magistrate Judge Sison found there was insufficient evidence of any widespread practice. He noted there was only evidence that refusals were falsified twice, both times involving Hagopian. This is not enough to show a practice that was so widespread, permanent and well settled that it in effect constituted a custom or usage with the force of law. *See Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016) (noting inmate may carry his burden of showing official policy by pointing to a general pattern of repeated behavior, not just an isolated event); *Wilson v. Cook Cty.*, 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has not adopted any bright-line rules for establishing what constitutes a widespread

---

[2] Magistrate Judge Sison incorrectly found these *Monell* claims to be against Madison County rather than against the Sheriff. In Illinois, however, the Sheriff is an independently elected constitutional officer, not an employee or agent of the county in which he is elected. Ill. Const. art. 7, § 4(c); 55 ILCS 5/3-6008; *Moy v. County of Cook*, 640 N.E.2d 926, 931 (Ill. 1994). As such, they are not under the control of the county and do not make policy for the county. *Id.* at 929; *Franklin v. Zaruba*, 150 F.3d 682, 685-86 (7th Cir. 1998); *Ryan v. County of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995); *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989). It is true that a county must fund a judgment against its sheriff, *Carver v. Sheriff of LaSalle Cty.*, 324 F.3d 947 (7th Cir. 2003), but the substantive claim is not against the county. Thus, the *Monell* claims in this case are really against the Sheriff, not Madison County. This distinction, however, makes no difference to the outcome of this case.

custom or practice, it is clear that a single incident—or even three incidents—do not suffice."). While there is evidence in this case of more than a single instance of falsifying a refusal to attend a medical appointment, the evidence shows only *two* instances, still not enough to establish a pattern of repeated behavior so widespread as to constitute a custom or practice of the Sheriff's Department with the force of law.

In his objection, Hagopian also suggests his own lack of medical treatment between the time of his injury and his eventual care in late January establishes a widespread pattern. However, his own experience of inadequate medical treatment for a one-month period again is not sufficient to allow a reasonable jury to find a widespread practice. A plaintiff claiming a municipal policy violated his constitutional rights "must do more than simply rely upon his own experience to invoke *Monell* liability." *Estate of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 1440 (2018) (citing *Daniel*, 833 F.3d at 734). If any individual defendants were responsible for Hagopian's inadequate medical treatment, they may be liable in their individual capacities, but on the record before the Court, the Sheriff in his official capacity may not.

For these reasons, the Court will overrule Hagopian's objection and will adopt the portion of the Report granting summary judgment on Count I for Lakin, Bost, and Joseph in their official capacities.

B.   Defendants' Objection

The defendants object to Magistrate Judge Sison's recommendation to deny summary judgment for Bost and Joseph in their individual capacities. Magistrate Judge Sison found that Bost and Joseph were aware of Hagopian's allegedly ineffective medical treatment because they received and responded to grievances about that treatment. He concluded that a reasonable jury

could find they were responsible for any inadequate treatment because they failed to act in response to the grievances. The defendants argue that they were not personally involved in Hagopian's medical treatment and permissibly relied on medical personnel to provide appropriate treatment.

"[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation. The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotations and citations omitted), *cert. denied*, 138 S. Ct. 657 (2018). An official is personally involved if he knows about the unconstitutional conduct and facilitates, approves, condones or deliberately turns a blind eye to it. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006). Simply ruling on a prison grievance about an alleged constitutional violation does not necessarily cause or contribute to the violation. *George v. Smith,* 507 F.3d 605, 609 (7th Cir. 2007). However, where an official learns from a detainee's grievance or other correspondence that the detainee is being deprived of a constitutional right, the failure to exercise his authority to investigate and/or address the situation may be sufficient to establish the official's personal involvement in the wrong. *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). Nevertheless, a nonmedical official may defer to the judgment of medical professionals so long as he did not ignore the plaintiff and had no reason to believe the plaintiff was not receiving adequate care. *McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

Here, Hagopian stated in numerous grievances from February 2016 to May 2016 that he continued to experience extreme pain and wanted surgery and/or the bone growth stimulator recommended by an outside orthopedic doctor. Joseph (and/or some other unknown person who

5

did not sign the responses) consistently responded that the jail medical staff was following the care instructions provided by the orthopedic doctor, was waiting for a report from Hagopian's visit to the orthopedic doctor before deciding how to proceed, was weighing whether to provide surgery, and had scheduled follow-up visits as directed by the orthopedic doctor. Joseph directed Hagopian to use the jail's sick call procedure for pain until his next orthopedic appointment, and informed Hagopian that the jail doctor was going to increase his medication in response to his complaints of pain. Joseph eventually responded to Hagopian's complaints about not getting a bone grown stimulator by telling him it would not be provided because the orthopedic surgeon had not recommended it, instead recommending conservative treatment with a special shoe and pain medication.

The responses to Hagopian's grievances show the responding officials did a good job of inquiring of the jail's medical personnel about the status of Hagopian's case and how his treatment was expected to progress. However, Hagopian continued to complain of extreme pain, even after the jail medical personnel increased his pain medication. The Court believes a reasonable jury could conclude that Hagopian's continued complaints of extreme pain should have been an indication to Bost and Joseph that Hagopian might not have been receiving adequate treatment and that they should have used their authority to insist that the medical team do a better job of treating his pain or its underlying cause. For this reason, the Court agrees with Magistrate Judge Sison that Bost and Joseph should remain in Count I in their individual capacities.

C. Unobjected to Parts of the Report

The Court has received no objection to the Report's recommendation as to the other parts of Count I. The Court has reviewed the Report for clear error in those regards and, with one

6

exception, finds none. That exception is the Report's explanation of the standard applicable to pretrial detainees' claims of inadequate medical care. Historically, the Court has applied to pretrial detainees the Eighth Amendment test for deliberate indifference to the health needs of convicted prisoners. *See Miranda v. County of Lake*, 900 F.3d 335, 350-51 (7th Cir. 2018); *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015). The test for an Eighth Amendment violation has two components, an objective and a subjective one. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the need about which the inmate complains must be objectively serious. *Id.* Second, the defendant must have a sufficiently culpable state of mind, that is, he must at a minimum be deliberately indifferent. *Farmer*, 511 U.S. at 834. He is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. That is the standard set forth in the Report with respect to Hagopian's medical claims.

The application of the deliberate indifference standard was called into question by the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). In *Kingsley*, a pretrial detainee sued for excessive force, and the Supreme Court held that the appropriate standard for a pretrial detainee plaintiff's claim was whether the officers' purposeful or knowing use of force was objectively unreasonable, not whether the officers were subjectively aware that their use of force was unreasonable. *Id.* at 2470.

The Seventh Circuit Court of Appeals recently held that, in light of *Kingsley*, the standard for pretrial detainees facing serious medical needs is whether the medical professional's conduct was objectively unreasonable, not whether the professional acted with deliberate indifference. *Miranda*, 900 F.3d at 352. The Court of Appeals described the objective reasonableness test:

> After *Miranda*, then, the controlling inquiry for assessing a due process challenge to a pretrial detainee's medical care proceeds in two steps. The first step, which focuses on the intentionality of the individual defendant's conduct, remains unchanged and "asks whether the medical defendants acted purposefully,

7

> knowingly, or perhaps even recklessly when they considered the consequences of
> their handling of [plaintiff's] case." *Id.* at 353. A showing of negligence or even
> gross negligence will not suffice. See *id.*; accord *Darnell v. Pineiro*, 849 F.3d 17,
> 35–36 (2d Cir. 2017) (concluding that "[a]ny § 1983 claim for a violation of due
> process requires proof of a *mens rea* greater than mere negligence").
>
> At the second step . . ., we ask whether the challenged conduct was objectively
> reasonable. See *Miranda*, 900 F.3d at 354. This standard requires courts to focus
> on the totality of facts and circumstances faced by the individual alleged to have
> provided inadequate medical care and to gauge objectively—without regard to
> any subjective belief held by the individual—whether the response was
> reasonable.

*McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018). While *Miranda* speaks in terms of medical personnel defendants, the Court believes the same reasonableness standard should apply as well to nonmedical personnel responsible for providing inadequate medical care.

The dated standard set forth in the Report, however, makes no difference to the correctness of Magistrate Judge Sison's recommendations as to Count I. Under either standard, Lakin, Rushing and Major should be dismissed because there is no evidence they were involved in any aspect of the medical treatment about which Hagopian complains.

For the foregoing reasons, the Court will adopt the Report's recommendations as to Count I.

## II. Count II

In Count II, Hagopian sues defendants Schreiber, Bardelmeier, Collman, Lakin, Bost, and Joseph for excessive force in an incident that occurred on February 27, 2016. The incident occurred when Hagopian was returning to his cell from the health care unit. He lay down on the floor to talk under the door to a different cell block to another inmate housed in that cell block. Schreiber told him to get up, and when he did not get up fast enough for Schreiber, Schreiber sprayed him with oleoresin capsicum ("OC") spray—also known as pepper spray. Bardelmeier and another deputy arrived and began using physical force on Hagopian. The defendants

8

maintain Hagopian failed to obey orders and posed a threat so the use of force was justified. Hagopian, on the other hand, says he was cooperative, was trying to comply with the order to get up but was hampered by his broken foot, and was in no way threatening.

Magistrate Judge Sison recommends granting summary judgment for Lakin, Bost, and Joseph (in their individual and official capacities) because there is no evidence of a policy and because they were not even present on the scene. Magistrate Judge Sison recommends granting summary judgment for Collman because, although he was present in the hallway, he was maintaining order among other detainees and was not participating at all in the altercation. Magistrate Judge Sison recommends denying summary judgment to Schreiber and Bardelmeier because, viewing all the disputed facts in Hagopian's favor, the force used might have been excessive.

### A. Defendants' Objections

The defendants object to denying summary judgment as to Schreiber and Bardelmeier. However, in their argument they construe the disputed facts in their favor, which is not appropriate on summary judgment. Construing all the facts in Hagopian's favor, the Court finds a reasonable jury could find their purposeful or knowing use of force was objectively unreasonable. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470 (2015). Therefore, it cannot grant summary judgment for Schreiber and Bardelmeier.

### B. Unobjected to Parts of the Report

The Court has received no objection to the Report's recommendation as to the other parts of Count II. The Court has reviewed the Report for clear error in those regards and, with one exception, finds none. That exception is again stems from *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), which redefined the standard for excessive force against a pretrial detainee. As

9

with Count I, however, because Magistrate Judge Sison's recommendation rests on personal involvement rather than the specific substantive standard, under either standard the recommendation is correct.

For the foregoing reasons, the Court will adopt the Report's recommendations as to Count II.

## III.  Count III

In Count III, Hagopian sues defendants Schreiber, Bardelmeier, Collman, Lakin, Bost, and Joseph for inadequate medical care after he was sprayed with OC spray and was subjected to physical force. Hagopian claims his foot injury was aggravated and his back was injured in the altercation. After the altercation, Hagopian was taken to a cell and given a wet towel to wipe the OC spray off. Nevertheless, he was in great pain from the spray. He sought and received medical treatment but was not completely happy with it.

Magistrate Judge Sison recommends granting summary judgment for Lakin, Bost, and Joseph (in their individual and official capacities) because there was no evidence of a policy or that they had any knowledge of Hagopian's injuries from the altercation or were personally involved in providing medical care to him afterward. Magistrate Judge Sison further recommends granting summary judgment for Collman because his conduct was limited to walking Hagopian to a cell afterward and giving him a wet towel. No evidence shows he was personally involved in anything to do with medical treatment. As for Schreiber and Bardelmeier, Magistrate Judge Sison found no evidence that either of those defendants played any role in denying Hagopian adequate medical treatment following their altercation with him.

Magistrate Judge Sison further views Count III as including a deliberate indifference claim for the actual use of the OC spray and physical force as opposed to the care provided to

10

Hagopian afterward. He recommends summary judgment for this aspect of Count III for all the defendants except Schreiber and Bardelmeier because he believes a reasonable jury could find those defendants were deliberately indifferent to Hagopian's safety when they used OC spray and physical force on him.

A.  Defendants' Objections

The defendants object to denying summary judgment for Schreiber and Bardelmeier on Count III, but do not address the deliberate indifference to safety aspect cited in the Report.

Despite this failure, the Court is inclined to agree that the deliberate indifference to safety component of Count III should be dismissed in its entirety but without prejudice. However, rather than for lack of evidence to support deliberate indifference, the Court believes dismissal is warranted because the deliberate indifference claim is duplicative of, or subsumed by, the excessive force claims pled in Count II. While both claims are analyzed under the Fourteenth Amendment because Hagopian is a pretrial detainee, the excessive force analysis provides the most specific constitutional protection against the improper use of force and can provide complete relief for any injury Hagopian suffered as a result of that conduct. Consequently, it is a better fit for the wrongful conduct alleged. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (substantive due process claim not available where more specific constitutional right protects against the conduct alleged). For this reason, the Court will dismiss the deliberate indifference to safety aspect of Count III without prejudice to the excessive force claim in Count II.

B.  Unobjected to Parts of the Report

The Court has received no objection to the Report's recommendation as to the other parts of Count III. The Court has reviewed the Report for clear error in those regards and, with one exception, finds none. That exception stems again from *Miranda v. County of Lake*, 900 F.3d

335, 350-51 (7th Cir. 2018), which, as noted above redefined the standard for inadequate medical care claims by a pretrial detainee. As with Count I, however, because Magistrate Judge Sison's recommendation rests on personal involvement rather than the specific substantive standard, under either standard Magistrate Judge Sison's recommendation is correct.

For the foregoing reasons, the Court will adopt the Report's recommendations as to Count III except that it will dismiss the deliberate indifference to safety aspect of Count III without prejudice as duplicative of the excessive force claim in Count II.

## IV. Conclusion

The Court has reviewed *de novo* the sections of the Report to which objections were made and has reviewed the rest of the Report for clear error. For the reasons explained above, the Court hereby:

- **ADOPTS** the Report (Doc. 109) as **MODIFIED** by this order;

- **OVERRULES** Hagopian's objection (Doc. 114);

- **OVERRULES** the defendants' objection (Doc. 115);

- **GRANTS in part** and **DENIES in part** the defendants' motion for summary judgment (Doc. 84);
    - The motion is **GRANTED** to the extent it seeks summary judgment:
        - on Counts I, II, and III in favor of defendants Lakin, Bost, and Joseph in their official capacities;
        - on Count I in favor of defendants Lakin, Rushing and Major;
        - on Count II in favor of defendants Lakin, Bost, Joseph, and Collman; and
        - on Count III in favor of defendants Schreiber, Bardelmeier, Collman, Lakin, Bost, and Joseph to the extent Count III asserts inadequate medical care;
    - The motion is **DENIED** to the extent it seeks summary judgment:
        - on Count I regarding defendants Bost and Joseph; and
        - on Count II regarding defendants Schreiber and Bardelmeier;
    These parts of Counts I and II will proceed to trial;

- **DISMISSES** Count III **without prejudice** to the extent Count III assert deliberate indifference to safety based on the spraying of OC spray and physical force rather than inadequate medical care;

12

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

The Court further **ORDERS** the parties to submit a proposed final pretrial order to Magistrate Judge Sison's chambers on or before July 26, 2019. Dates for the Final Pretrial Conference and Trial before Judge Gilbert will be set by separate order.

**IT IS SO ORDERED.**
**DATED: June 18, 2019**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**